**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ALEJANDRO NEAVE VASQUEZ,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:18-cv-00802** |
| | ) | **Judge Trauger** |
| **SHAWN PHILLIPS, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM AND ORDER**

**I. Introduction**

Alejandro Neave Vasquez, an inmate of the Northwest Correctional Complex in Tiptonville, Tennessee, has filed a pro se petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) and has paid the filing fee.

According to the petition, the petitioner was convicted by a jury in Davidson County Criminal Court on July 21, 2010, of conspiracy to deliver 300 grams of cocaine and possession with intent to deliver 300 grams of cocaine in a drug-free school zone. (Doc. No. 1 at 1–2.) For these crimes, the petitioner received a 20-year prison sentence. (*Id.* at 1.) He now challenges the legality of his conviction and sentence, claiming that the evidence was insufficient to support his conviction and that he was denied the effective assistance of counsel at trial. (*Id.* at 5–8.)

Upon initial review of the petition, the court directed the respondent to file the state court record and to respond to the petitioner's claims. (Doc. No. 8.) The respondent filed the state court record on March 26, 2019. (Doc. No. 9.) On March 27, 2019, the respondent filed a motion to dismiss the petition as untimely (Doc. No. 10) and a supporting memorandum of law (Doc. No. 11.) The petitioner has filed a response in opposition to the motion to dismiss. (Doc. No. 12.)

Having carefully considered these pleadings and the record, it appears that an evidentiary hearing is not needed in this matter. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief). Therefore, the court shall dispose of the petition as the law and justice require. Rule 8, Rules Gov'g § 2254 Cases.

**II. Procedural History**

Following the petitioner's 2010 conviction and sentencing, the Tennessee Court of Criminal Appeals (TCCA) affirmed the Davidson County Criminal Court in a decision dated November 28, 2012, and the Tennessee Supreme Court denied discretionary review on March 20, 2013. *State v. Vasquez*, No. M2010-02538-CCA-R3-CD, 2012 WL 5989875 (Tenn. Crim. App. Nov. 28, 2012), *perm. app. denied* (Tenn. Mar. 20, 2013). The petitioner did not seek review in the U.S. Supreme Court.

On April 4, 2013, the petitioner filed a pro se petition for post-conviction relief in the trial court. (Doc. No. 9-14 at 9–25.) The trial court denied the petition after holding an evidentiary hearing. (*Id.* at 109–117; Doc. No. 9-15.) The TCCA affirmed the trial court's denial of post-conviction relief in a decision dated May 28, 2015, and the petitioner's application for permission to appeal to the Tennessee Supreme Court was denied on September 17, 2015. *Vasquez v. State*, No. M2014-01404-CCA-R3-PC, 2015 WL 3406803 (Tenn. Crim. App. May 28, 2015), *perm. app. denied* (Tenn. Sept. 17, 2015).

After the petitioner submitted his pro se petition for writ of habeas corpus under Section 2254 to prison authorities for mailing on August 21, 2018 (Doc. No. 1 at 15), it was received and filed in this court on August 29, 2018. From the outset of this action, the petitioner has conceded

its untimeliness but argued that he is entitled to equitable tolling of the statute of limitations. (*Id.* at 13; Doc. No. 2 at 3.)

### III. Analysis

#### A. Timeliness of the Petition

Petitions under Section 2254 are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1); *Holland v. Florida*, 560 U.S. 631, 635 (2010). In most cases, including the case at bar, the limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). Following the Tennessee Supreme Court's denial of discretionary review on March 20, 2013, the petitioner had ninety days in which to take the final step in the direct appeal process by filing a petition for writ of certiorari in the U.S. Supreme Court. He did not file such a petition, and so his conviction became final at the conclusion of this ninety-day period, on June 18, 2013. *Gonzalez v. Thaler*, 132 S. Ct. 641, 653 (2012); *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009). The running of the statute of limitations is counted from the following day, June 19, 2013. *See* Fed. R. Civ. P. 6(a)(1)(A) (when computing a time period "stated in days or a longer unit of time . . . exclude the day of the event that triggers the period"); *Bronaugh v. Ohio*, 235 F.3d 280, 284 (6th Cir. 2000) (applying Rule 6(a)'s standards for computing periods of time to habeas filing).

However, "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2). The petitioner filed his pro se state post-conviction petition on April 4, 2013, prior to the expiration of his time for seeking direct review before the U.S. Supreme Court. The period of statutory tolling thus began on April 4, 2013 and continued until September 17, 2015,

when the Tennessee Supreme Court declined to review the post-conviction case. With the conclusion of state post-conviction proceedings, the one-year limitations period began to run the next day, on September 18, 2015. *Lawrence v. Florida*, 549 U.S. 327, 331–32 (2007). It expired one year later, on September 18, 2016.

The petitioner filed his federal habeas petition 702 days after the expiration of the limitations period, on August 21, 2018, when he delivered it to prison authorities for mailing to the court. (Doc. No. 1 at 15); *see Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (recognizing "relaxed filing standard" under which "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court"). The parties agree on the operative dates recited above and that the petition was filed after the statute of limitations expired. They disagree on the issue of whether the court should nonetheless reach the merits of the petition because the petitioner is entitled to equitable tolling of the limitations period.

### B. Equitable Tolling

The expiration of the statutory limitations period does not act as a jurisdictional bar to habeas relief; thus, the statute may be equitably tolled in appropriate cases. *Holland*, 560 U.S. at 645–49. The doctrine of equitable tolling is used sparingly and is typically applied "only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (citing *Graham–Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560–61 (6th Cir. 2000)). It is the petitioner's burden to show that he is entitled to equitable tolling, *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002), a burden he may carry by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely

filing." *Holland*, 560 U.S. at 649; *see also Stiltner v. Hart*, 657 F. App'x 513, 520 (6th Cir. 2016). In this case, the petitioner fails to carry this burden.

The petitioner argues that the extraordinary circumstance that prevented him from timely filing his petition is "the fact that he is a non-English speaking prisoner or Limited English Proficiency (LEP) inmate", and Northwest Correctional Complex (NWCX) "failed to provide him with Spanish language legal materials, Westlaw in Spanish, or any Spanish legal forms and no Spanish legal assistance [or] interpreters who could properly identify the Petitioner's legal problems and convey them to institutional legal aids in a meaningful way." (Doc. No. 12 at 4.) The petitioner concedes that NWCX provides bilingual inmate interpreters but asserts that these interpreters are only competent to translate a "casual conversation" and "are useless when it comes to AEDPA or any other thing related to legal assistance, legal research, pleadings, rules or otherwise." (*Id.*) He acknowledges that the bilingual inmate interpreters at NWCX made four requests on his behalf during the limitations period (and five overall), for a Spanish-speaking legal aide or Spanish-language legal materials (Doc. No. 2 at 46 & n.4, 52–56),[1] but complains that the interpreters themselves "possessed no more understanding [of the law or legal research] than the Petitioner with the exception of the ability to read, write and speak the English language." (Doc. No. 12 at 14.)

Assuming without deciding that the four requests prior to the expiration of the AEDPA limitations period for a Spanish-speaking legal aide are sufficient to establish that the petitioner

---

[1]     Of the four requests made prior to the expiration of the limitations period—on September 25, October 28, and December 14, 2015, and on March 10, 2016—none garnered an official response. (Doc. No. 2 at 52–55.) The petitioner's fifth and final request was made on April 10, 2018, and the responding official simply informed him that "[b]y request a Spanish translator can be provided." (*Id.* at 56.)

was diligent in pursuing his rights,[2] the court finds that the language barrier he alleges is not a sufficiently extraordinary circumstance to have prevented his timely filing in this case.

In *Cobas v. Burgess*, the Sixth Circuit held that an untimely habeas petitioner's inability "to understand, read or write the English language" did not automatically entitle him to equitable tolling. 306 F.3d 441, 444 (6th Cir. 2002). The court announced the following guideline to be applied to equitable tolling claims by non-English-speaking petitioners:

> We hold that where a petitioner's alleged lack of proficiency in English has not prevented the petitioner from accessing the courts, that lack of proficiency is insufficient to justify an equitable tolling of the statute of limitations. An inability to speak, write and/or understand English, in and of itself, does not automatically give a petitioner reasonable cause for failing to know about the legal requirements for filing his claims.
>
> In general, the existence of a translator who can read and write English and who assists a petitioner during his appellate proceedings implies that a petitioner will not have reasonable cause for "remaining ignorant of the legal requirement for filing his claim." In announcing this rule, we should note that the translator acting on behalf of a non-English speaking petitioner need have no qualification other than the ability to communicate in English. Since a petitioner does not have a right to assistance of counsel on a habeas appeal, and because an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations, we are loath to impose any standards of competency on the English language translator utilized by the non-English speaking habeas petitioner.

*Id.* at 444 (internal citations omitted). "*Cobas* has been construed to mean that 'a non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel or other source.'" *Dorantes v. Genovese*, No. 3:19-cv-00543, 2019 WL 6524888, at *3 (M.D. Tenn.

---

[2]     *Compare Levy v. Osborne*, 734 F. App'x 960, 962–64 (6th Cir. 2018) (noting significant factual dispute concerning petitioner's English proficiency, but holding that one request for translation assistance and other "minimal efforts" to pursue federal habeas relief is insufficient to establish due diligence in any event; stating that case in which petitioner made "ten or more efforts" to seek assistance represented "other end of the spectrum") (citing *Pabon v. Mahanoy*, 654 F.3d 385 (3d Cir. 2011)).

Dec. 3, 2019) (Richardson, J.) (quoting *Mendoza v. Carey*, 449F.3d 1065, 1070 (9th Cir. 2006)). If an inmate translator is provided, the non-English-speaking petitioner is on the same footing as petitioners who speak English and is thus not entitled to equitable tolling, as "*Cobas* expressly disavows any requirement that the person translating for a petitioner have any qualification other than the ability to communicate in English or meet any other standards of competency." *Dorantes*, 2019 WL 6524888, at *3 (citation and internal quotation marks omitted).

Here, the petitioner made multiple requests for legal assistance through the interpreters available to him at NWCX, acknowledging their availability while decrying their lack of legal acumen. The respondent points out that the petitioner also made two timely filings in state court while incarcerated at NWCX, though the petitioner states that those filings were prepared by "his co-defendant, Mr. Araguz [who] arranged for the preparation of the Petitioner's legal documents as well" "until they stopped communicating with each other." (Doc. No. 12 at 15.) Regardless of the petitioner's prior state court filings, and despite his professed need for a Spanish-speaking legal assistant "to determine what his legal claims are" (*id.* at 14), it is sufficient under the law of this circuit that he had access to a translator able to communicate in English during the limitations period. Because there is no dispute that the petitioner had such access—and because he was not further entitled to a translator who could understand legal terminology or render legal assistance, given that "an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations," *Cobas*, 306 F.3d at 444—he is not entitled to equitable tolling of the limitations period during the 702 days between its expiration and the filing of his Section 2254 petition.

The petitioner cites *Levy v. Osborne* as demonstrating the need for the court to hold an evidentiary hearing on his entitlement to equitable tolling prior to dismissing his case as untimely.

In *Levy*, retired Chief Judge of this court, Kevin H. Sharp, ordered the Magistrate Judge to hold an evidentiary hearing for development of the record of Levy's alleged lack of English proficiency. Judge Sharp deemed the evidentiary hearing necessary to determine whether Levy's lack of English proficiency was so severe "as to serve as a real impediment to the timely filing of his habeas petition," based on authority outside the Sixth Circuit which highlighted the need for such record development where there is a factual dispute as to the petitioner's English proficiency; the petitioner had not previously been allowed to present proof of his inability to speak English; and, the petitioner alleged an inability to obtain translation services during the limitations period. *Levy v. Osborne*, No. 1:10-0005, 2013 WL 3877816, at *3 (M.D. Tenn. July 26, 2013). Following the evidentiary hearing, the Magistrate Judge found that Levy's testimony to an inability to understand English "simply was not credible" and recommended that the statute of limitations not be equitably tolled. *Levy v. Osborne*, No. 1:10-0005, 2016 WL 7414530, at *10 (M.D. Tenn. May 3, 2016). That recommendation was adopted, 2016 WL 7407301 (M.D. Tenn. Dec. 22, 2016), and the Sixth Circuit affirmed the denial of the "extraordinary remedy" of equitable tolling and the dismissal of the untimely petition, albeit on grounds that Levy had not pursued his rights diligently. *Levy*, 734 F. App'x at 963–64.

*Levy* is readily distinguishable from the case before this court. The petitioner in *Levy* alleged that he had been hampered at trial and had failed entirely to pursue state post-conviction relief, or to pursue timely relief in federal habeas, because of his virtual inability to speak or understand English (which the state disputed) and the complete denial of translator services during his incarceration. The petitioner in the instant case, however, was provided translator services at NWCX as discussed above and received a full evidentiary hearing in state post-conviction proceedings centered around the issue of the alleged language barrier between the petitioner and

8

trial counsel. (Doc. No. 9-15.) The post-conviction trial court denied relief, and the TCCA affirmed, based on the credible testimony of trial counsel that "he was able to effectively communicate with petitioner without an interpreter and that petitioner understood English to a greater extent than his actions indicated." *Vasquez v. State*, No. M2014-01404-CCA-R3-PC, 2015 WL 3406803, at *4 (Tenn. Crim. App. May 28, 2015). Thus, unlike the petitioner in *Levy*, the petitioner here had a prior opportunity to litigate the extent of the language barrier, and the record establishes that he "is a Limited English Proficiency" inmate whose equitable tolling argument is based on the unavailability of Spanish-speaking legal aides or Spanish-language legal resources at NWCX (Doc. No. 2 at 48), not the unavailability of a translator. Accordingly, the court finds no grounds for holding an evidentiary hearing in this case.

In sum, the petitioner has failed to carry his burden of showing that his case warrants equitable tolling, which is only appropriate in circumstances that prevent timely filing and are "both beyond the control of the litigant and unavoidable with reasonable diligence." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012). Even if he was unable, with the help of a mere translator, to file his comprehensive petition and 49-page memorandum of law prior to 2018, the petitioner cannot establish that his circumstances unavoidably prevented him from recognizing the need for making some filing under Section 2254 prior to September 18, 2016.

Finally, the petitioner makes no claim of actual innocence of the charges of conviction, such that the court could reach the merits of his petition despite its untimeliness. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (allowing that actual innocence can operate in rare cases as an "equitable exception to § 2244(d)(1)," rather than grounds for tolling). Although the petitioner claims that the evidence against him was insufficient to support his conviction, "'actual innocence' means factual innocence, not mere legal insufficiency" of the proof against the petitioner. *Bousley*

9

*v. United States*, 523 U.S. 614, 623 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). Therefore, this narrow exception to a procedural bar "must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *see McQuiggan*, 569 U.S. at 398–99 (requiring "new evidence" to invoke actual innocence exception to AEDPA's statute of limitations). No such claim based on new evidence is made here.

### IV. Conclusion

For the reasons stated above, the respondent's motion to dismiss (Doc. No. 10) is **GRANTED**. In view of its untimely filing, the petition for writ of habeas corpus (Doc. No. 1) is **DENIED** and this action is **DISMISSED**.

"When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable . . . whether the district court was correct in its procedural ruling." *Swantak v. Romanowski*, No. 08-CV-10126, 2008 WL 186127, at \*2 (E.D. Mich. Jan. 18, 2008) (citing *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000)). Because reasonable jurists could not find it debatable that the court is correct in its procedural ruling under the circumstances presented here, the court declines to issue a certificate of appealability in this case.

This is the final order in this action. The Clerk **MUST** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge